

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-18-2002

# Edison Bros Stores v. Barclays Global Inv

Precedential or Non-Precedential: Precedential

Docket No. 01-1864

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

## Recommended Citation

"Edison Bros Stores v. Barclays Global Inv" (2002). *2002 Decisions.* Paper 581.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/581

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed September 18, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1864

EBS LITIGATION LLC

v.

BARCLAYS GLOBAL INVESTORS, N.A.;
GREENWAY PARTNERS, L.P.;
GREENTREE PARTNERS, L.P.;
WILSHIRE ASSOCIATES INCORPORATED;
N.A. MELLON BANK;
IBM RETIREMENT FUND TRUST;
DREW BAEBLER; LAURA BAEBLER

BARCLAYS GLOBAL INVESTORS, N.A.;
GREENWAY PARTNERS, L.P.;
GREENTREE PARTNERS, L.P.;
        Third-Party Plaintiffs

v.

DAVID B. COOPER; JULIAN I. EDISON;
PETER A. EDISON; JANE EVANS;
MICHAEL H. FREUND; KARL W. MICHNER;
ALAN D. MILLER; ANDREW E. NEWMAN;
ALAN A. SACHS; CRAIG D. SCHUNCK;
MARTIN SNEIDER; DAVID O. CORRIVEAU;
JAMES W. CORLEY; WALTER S. HENRION;
MARK H. LEVY; MARK B. VITTERT;
DAVE & BUSTERS, INC.
        Third-Party Defendants

Barclays Global Investors, N.A.
Greenway Partners, L.P., and Greentree Partners, L.P.,
individually and in their capacity as class representatives
of all members of the defendant class certified in this
action, and third-party plaintiffs,
        Appellants.

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil Action No. 98--cv-00547
(Honorable Sue L. Robinson)

Argued: July 11, 2002

Before: SCIRICA and GREENBERG, Circuit Judges ,
and FULLAM,* District Judge

(Filed: September 18, 2002)

Edward M. McNally (argued)
Michael J. Maimone
James E. Drnec
Morris, James, Hitchens &
 Williams LLP
222 Delaware Avenue - 10th Floor
P.O. Box 2306
Wilmington, DE 19899
 Attorneys for the Appellants

A. Gilchrist Sparks, III (argued)
R. Judson Scaggs, Jr.
Megan E. Ward
Morris, Nichol, Arsht & Tunnell
1202 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
 Attorneys for Edison Director Third-
Party Defendants Below, Appellees

_____

* Honorable John P. Fullam, Senior Judge of the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

Philip Trainer, Jr.
Ashby & Geddes
222 Delaware Avenue - 17th Floor
P.O. Box 1150
Wilmington, DE 19899

James P. Reid (argued)
Stacy R. Obenhaus
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201

 Attorneys for D&B Defendants
Appellees

Daniel J. DeFranceschi
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Richard A. Chesley
Houlihan Lokey Howard & Zukin
123 North Wacker Drive, 4th Floor
Chicago, IL 60606

 Attorneys for EBS Litigation LLC
Appellee

OPINION OF THE COURT

FULLAM, District Judge:

This is an appeal from the dismissal of a third-party complaint, in an adversary action pending in the District Court for the District of Delaware (the reference to the Bankruptcy Judge having previously been withdrawn). The dismissal of the third-party complaint did not dispose of the entire adversary action, but has been certified as final for purposes of appeal, pursuant to Fed.R.Civ.P. 54(b).

BACKGROUND

As part of a corporate re-shuffling, Edison Brothers Stores, Inc., a publicly-held corporation (hereinafter

3

"Edison") acquired the stock of Dave & Busters, Inc. ("D&B"). On June 29, 1995, pursuant to a unanimous resolution of the Edison Board, Edison distributed the D&B stock to all Edison shareholders, as a dividend. Each Edison shareholder received one share of D&B stock for every five shares of Edison stock held. In public filings at that time, the Edison Directors represented that Edison was in sound financial condition. A few months later, however, on November 3, 1995, Edison filed a voluntary petition in bankruptcy under Chapter 11.

In the course of the bankruptcy proceedings it became apparent that the 1995 stock dividend qualified as a voidable transfer under 11 U.S.C. SS 544(b) and 548(a).

Edison's Plan of Reorganization was confirmed on September 9, 1997, effective as of September 19, 1997. The Plan contemplated the formation of a new entity, EBS Litigation, LLC ("EBS"), which would pursue litigation in order to retrieve, for the bankruptcy estate, debts owed to the estate, including recoveries of the previously-distributed D&B stock or its monetary equivalent. On September 30, 1997, EBS filed the present case, naming a class of defendants consisting of all of the shareholders who had received the D&B stock and had neither returned nor paid for it. The defendant class is represented by appellant Barclays Global Investors, N.A.

On March 29, 2000, Barclays filed a third-party complaint against the former Directors of Edison ("Edison defendants") and Directors of D&B ("the D&B defendants"). In the third-party complaint Barclays alleges that the Edison defendants breached their fiduciary duties in declaring the illegal stock dividend, misleading the Edison shareholders as to the financial condition of the company and the legitimacy of the dividend; and also asserts claims against the Edison defendants for contribution and subrogation. The D&B defendants are charged with aiding and abetting the breaches of fiduciary duty and other securities violations.

The District Court dismissed the third-party complaint in its entirety, ruling that the claims for breaches of fiduciary

duty and securities violations in connection with the stock

dividend were time-barred, and that the third-party complaint did not state valid claims for contribution or subrogation. This appeal followed.

STATUTE OF LIMITATIONS

All parties agree that the statute of limitations for the alleged breaches of fiduciary duty and related offenses is three years. It is also agreed that, under Delaware law, the limitations period begins when the wrongful acts are committed, even though the injured party may be ignorant of the existence of a cause of action. See e.g. In re Dean Witter P'ship Litig., 1998 WL 442456 at * 4 (Del.Ch. July 17, 1998). Thus, in this case, the limitations period began to run on June 29, 1995, when the D&B stock was distributed as a dividend, and expired on June 29, 1998, unless the statute was tolled during part or all of that period.

Delaware law recognizes three potential sources of tolling: (1) the doctrine of inherently unknowable injuries; (2) the doctrine of fraudulent concealment; and (3) the doctrine of equitable tolling. See, In re Dean Witter P'ship Litig. supra; In re MAXXAM, Inc./Federated Dev.S'holders Litig., 1995 WL 376942 at *6-7 (Del.Ch. June 21, 1995). Barclays asserts that the statute of limitations was indeed tolled, under all three of these doctrines.

Under Delaware law, however, "if the limitations period is tolled under any of these theories, it is tolled only until the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury. Thus, the limitations period begins to run when the plaintiff is objectively aware of the facts giving rise to the wrong, i.e, on inquiry notice." In re Dean Witter P'ship Litig., supra at *6 (emphasis in original).

The District Court ruled that Barclays was on "inquiry notice" as of the commencement of Edison's bankruptcy proceeding, since it knew that it had received the stock dividend less than one year earlier, and should have realized that there was a potential for an avoidance claim under 11 U.S.C. S 548(a). "Inquiry notice" requires only notice of "facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued,

would lead to the discovery." Becker v. Hamada, Inc. 455 A.2d 353, 356 (Del. 1982).

The proper resolution of this issue requires careful analysis of (1) the precise nature of the claims now being asserted by Barclays, (2) whether an objectively reasonable person would have realized the need to investigate further,

and (3) what information such an inquiry would have disclosed.

For purposes of analysis, at this stage of the proceedings we must assume that the Edison Directors did violate a fiduciary duty to the Edison stockholders and that they were aided and abetted by the D&B defendants. If the stock dividend occurred when Edison was insolvent, or rendered Edison insolvent, it was illegal under Delaware law, and voidable in bankruptcy. The General Corporation Law of Delaware provides, in S174(a):

> "In case of any wilful or negligent violation . .. the directors under whose administration the same may happen shall be jointly and severally liable, at any time within six years after paying such unlawful dividend or after such unlawful stock purchase or redemption, to the corporation and to its creditors in the event of its dissolution or insolvency, to the full amount of the dividend unlawfully paid . . ."

S174(b) of the same statute provides:

> "Any director against whom a claim is successfully asserted under this section shall be entitled to contribution from the other directors who voted for or concurred in the unlawful dividend . . .

> "(c) Any director against whom a claim is successfully asserted under this section shall be entitled, to the extent of the amount paid by such director as a result of such claim, to be subrogated to the rights of the corporation against stockholders who received the dividends on, or assets for the sale or redemption of, their stock with knowledge of facts indicating that such dividend, stock purchase or redemption was unlawful under this chapter in proportion to the amounts received by such stockholders respectively."

6

Should the Edison shareholders represented by Barclays have realized, when the bankruptcy petition was filed, that the distribution of D&B stock five months earlier rendered Edison insolvent, or triggered its insolvency? They had been assured, by the Edison defendants, in public filings, that such was not the case. The filing of the bankruptcy petition undoubtedly should have alerted the Edison stockholders to the realization that the previously-expressed belief of the Edison defendants that Edison had adequate cash flows to support continued operations, and that its financial future was not in doubt, had ultimately proven incorrect, but we are not persuaded that an objectively-reasonable shareholder should have realized that the Edison Directors had breached their fiduciary obligations.

There is no suggestion in the record before us that anyone believed, or contended, that the stock distribution had occurred when Edison was insolvent, or that the stock

distribution caused its insolvency, until, in connection with the adoption of Edison's Reorganization Plan, Edison filed a disclosure statement, on June 30, 1997. We conclude, therefore, that the statute of limitations was tolled until June 30, 1997, because the Edison defendants actively concealed the true financial condition of the company until the bankruptcy petition was filed, and thereafter concealed until June 30, 1997, the fact (if it was a fact) that the stock distribution may have contributed to the insolvency. Barclays' third-party complaint, filed on March 29, 2000, was therefore timely.

Moreover, we must not lose sight of the practical realities of the situation. We suspect it would not occur to an objectively-reasonable stockholder with full knowledge of the applicable law, even if he or she suspected that the distribution of D&B stock might be vulnerable to challenge, to do anything about it unless such a challenge became a reality. Until Edison's creditors took action to recover the stock, the recipients of the stock dividend could scarcely be expected to challenge it themselves, and thus trigger an avalanche. It may well be, therefore, that the statute of limitations should be deemed to have been tolled until confirmation of the Reorganization Plan which provided for such litigation by EBS; the Plan was confirmed on

7

September 9, 1997, and became effective on September 19, 1997.

THE MERITS OF BARCLAYS' FIDUCIARY-DUTY CLAIMS

Interspersed throughout appellees' briefs are suggestions that dismissal of the third-party complaint should be upheld on the alternative ground that Barclays has no valid claims against the Edison defendants for breach of fiduciary duties because the Edison shareholders represented by Barclays are only being asked to return something they did not pay for. But the merits of the underlying lawsuit are not before us. The third-party complaint which is before us at this time does undoubtedly contain adequate allegations to impose liability upon the Edison defendants, in the event that Barclays is held liable to EBS. Barclays may prevail in the underlying litigation, and may be able to charge the Edison defendants with reimbursement of defense costs. Or, Barclays may be held liable for a greater amount than the share prices contemplated in the settlement proposal embodied in the Reorganization Plan.

Needless to say, we express no view as to the actual merits of any of the claims or defenses asserted in the underlying action. We hold merely that, at this stage, the possibility of successful third-party claims cannot be ruled out.

CONTRIBUTION AND SUBROGATION

All parties agree that, to support a claim for contribution, there must be a joint tortfeasor relationship (or a joint contractual obligation, plainly not present here); and that subrogation is available only if third-party plaintiffs are required to bear the burden of an obligation which is really that of the Edison defendants. The District Court ruled that neither doctrine was available in this case, but we are constrained to disagree.

Under Delaware General Corporation Law, as quoted above, the Edison Directors would be liable in full for the entire stock dividend, and could recover from the recipients

of the dividend only if the recipients had been aware of the impropriety in issuing the dividend. If EBS succeeds in the underlying litigation, the shareholders represented by Barclays might be held liable even though they were not aware of the impropriety of the dividend. In our view, this would, at least potentially, give rise to a subrogation claim, since innocent shareholders will have been paying sums which were the obligation of the Edison defendants.

Alternatively, should it be established that the Edison shareholders represented by Barclays were not innocent recipients of the stock dividend, a joint tortfeasor relationship would thus have been established. And, if the Barclays shareholders are held liable for more than the share price paid by the Edison defendants and other culpable shareholders, there might be a basis for a contribution claim. In our view, all of these issues should be resolved in the course of the underlying litigation; they cannot appropriately be resolved at this point, on the basis of the pleadings.

CONCLUSION

For the reasons stated above, we hold that all of the claims asserted in the third-party complaint were timely filed, and that the third-party complaint is adequate in all respects to withstand dismissal under Fed.R.Civ.P. 12(b)(6). The judgment appealed from will therefore be reversed, and the case remanded for further proceedings.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit